UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

TYLER SCHESSL, an infant by his mother and natural guardian, DAWN SCHESSL and KURT SCHESSL, individually,

Plaintiffs,

vs.

FRANKLIN SPORTING INDUSTRIES, INC.,

Defendants.

-------------------------------------------------------------------x

FRANKLIN SPORTS, INC.,

Third-Party Plaintiff,

vs.

JUDI COMS, FRANK COMS, PATTY CAMERON, EVAN CAMERON, an infant, by his mother and natural Guardian, PATTY CAMERON, JEFF BANKY, JOHN DOE1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, ROE 6, ROE 7, ROE 8, ROE 9, and ROE 10

Third-Party Defendants.

-------------------------------------------------------------------x

**COMPROMISE ORDER**

Docket No.: 07-CV-6234

MAT-MWP

Upon reading and filing the affidavit of **DAWN SCHESSL and KURT SCHESSL**, guardian parents of the infant herein, duly sworn to the 17th day of August 2012; the Consent to Settlement of infant plaintiff, **TYLER SCHESSL** herein, duly sworn to the 28th day of August 2012; the Physician's Affirmation of Mary L. Dombovy, M.D. duly sworn to the 16th day of August 2012 and the Affirmation of **ANDRES F. ALONSO ESQ.**, a member of the law firm of **ALONSO KRANGLE LLP,** attorneys for plaintiffs, and it appearing that the infant, **TYLER SCHESSL** is fourteen (14) years of age, having been born on November 24, 1997, the guardian parents and a representative from the attorney's office having appeared before the court on the ________ day of ________________, 2012 and it appearing that the best interests of the said infant will be served,

NOW, on motion of **ALONSO KRANGLE LLP** attorneys for the plaintiffs, it is,

**ORDERED**, that the guardian parents, **DAWN SCHESSL and KURT SCHESSL** be and hereby are authorized to enter into a compromise of all claims herein upon the following terms, to wit:

That defendant, FRANKLIN SPORTING INDUSTRIES, representatives pay the sum of $2,850,000.00 in full settlement of the infant plaintiff TYLER SCHESSL's, claim herein and that defendant, COMBS, representatives pay the sum of $25,000.00 and that defendant CAMERON pay the sum of $25,000.00 in full settlement of the infant plaintiff **TYLER SCHESSL**'s, claim herein for a total settlement of $2,900,000.00. The settlement is to be distributed as follows:

The firm of Parker Waichman, LLP shall recover a total of $ representing its disbursements.

The firm of Alonso Krangle, LLP shall recover a total of $ representing its disbursements.

The firm of Parker Waichman, LLP shall receive a total of $ representing its legal fee in this matter.

The firm of Alonso Krangle LLP shall receive a total of $ representing its legal fee in this matter,

**KURT and DAWN SCHESSL** shall receive the sum of $27,786.83 representing the payment for unreimbursed expenses, and it is further,

**ORDERED**, that the defendants, FRANKLIN SPORTING INDUSTRIES, and ARCHER INSURANCE, shall fund a stream of future payments as set forth in **Exhibit "A"** by means of the purchase of an annuity in the sum of $1,800,000.00.

**ORDERED**, that defendant(s) and/or their insurer(s), [Archer], shall arrange for the purchase of an annuity at the time of settlement funding, pursuant to CPLR Sec. 5003-a (b), which shall make the future periodic payments to the infant plaintiff, Tyler Schessl, as described in **Exhibit "A"** as prepared by Milestone Consulting, LLC, settlement planning firm. The future periodic payments outlined in the attached Exhibit is subject to change based on the time of annuity funding. Periodic payments on the dates described therein and final payment amounts will be based on interest rates available at the time of funding and shall be fully described in the Qualified Assignment(s) and Release and annuity contract(s); and it is further,

**ORDERED**, that, in light of this Court's determination that a structured settlement is in the best interests of the infant plaintiff and that said periodic payments constitute damages on account of personal physical injury or sickness in a case involving personal physical injury or sickness within the meaning of section 104 (a)(2) and 130 (c) of the Internal Revenue Code of 1986, as amended, no part of the periodic payments or lump sums being paid by or on behalf of defendant(s), [Archer], and/or their insurer(s) as set forth in this Order may be paid directly to the plaintiff(s); and it is further,

**ORDERED**, that defendant(s), [Archer], or their insurer(s), shall make qualified assignments under Section 130 of the Internal Revenue Code to MetLife Towers Resources Group, Inc., or an assignment company affiliated with a comparably rated life insurance company as Metropolitan Life Insurance Company, of the future periodic payment obligations, which shall have a cost of $1,800,000.00, and, when such assignments are made, defendant(s), [Archer], shall fund their obligations for such periodic payments by arranging for the purchase of annuity contracts from Metropolitan Life Insurance Company, or a comparably rated life insurance company licensed to do business in the State of New York, and in accordance with the terms of said assignments, MetLife Tower Resources Group, Inc., or an assignment company affiliated with a comparably rated life insurance company, shall be substituted as obligor of such payments for defendant(s), [Archer], who shall be released from any further obligation to make said future periodic payments; and it is further,

**ORDERED,** in the event that **TYLER SCHESSL** shall die at any time prior to the receipt of his respective guaranteed payments, the balance of any guaranteed payments shall be paid to his Estate or to any such person he may so designate (upon attaining age of majority); and it is further,

**ORDERED**, that plaintiffs **KURT and DAWN SCHESSL** shall recover the sum of $27,786.83 representing unreimbursed expenses; and it is further,

**ODERED** that the remaining sum of $28,071.87 be deposited in a custodial account at Fairport Federal Credit Union located at 70 South Main Street, Fairport, NY for the sole benefit of infant plaintiff, **TYLER SCHESSL**'s medical and rehabilitative care and that the custodian of said account shall submit quarterly accountings with regard to the use of all funds from said account; and it is further,

**ORDERED**, that conditioned with the terms of this Order, the parents, **DAWN SCHESSL** and **KURT SCHESSL**, be and hereby are authorized and empowered to execute and deliver a general release and any other instruments necessary to effectuate the settlement herein, and that the filing of a bond is hereby waived; and it is further,

**ORDERED,** that the terms of this settlement and infants compromise order be confidential, that the parties and their legal counsel shall not discuss the terms herein except with their immediate family, attorneys, accountants, financial advisors or as compelled by legal process; and it is further

**ORDERED,** that the sound administration of justice, the privacy of the plaintiffs and the nature of the proceedings outweigh any public or other interest in keeping these proceedings open. Good cause to seal these proceedings and to close the courtroom to all non-parties has been shown; and it is further

**ORDERED,** that the Court's file in this matter be sealed.

______________________________

Hon. Michael A. Telesca

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

TYLER SCHESSL, an infant by his mother and natural guardian, DAWN SCHESSL and KURT SCHESSL, individually,

Plaintiffs,

vs.

FRANKLIN SPORTING INDUSTRIES, INC.,

Defendants.

---------------------------------------------------------------------x

FRANKLIN SPORTS, INC.,

Third-Party Plaintiff,

vs.

JUDI COMS, FRANK COMS, PATTY CAMERON, EVAN CAMERON, an infant, by his mother and natural Guardian, PATTY CAMERON, JEFF BANKY, JOHN DOE1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, ROE 6, ROE 7, ROE 8, ROE 9, and ROE 10

Third-Party Defendants.

---------------------------------------------------------------------x

**ATTORNEY AFFIRMATION**

Docket No.: 07-CV-6234

I, **ANDRES F. ALONSO**, duly admitted to practice law in the State of New York, respectfully show:

I maintain offices for the practice of law with the firm of **ALONSO KRANGLE LLP**, at 445 Broad Hollow Road, Suite 205, Melville, NY 11747.

I am not related to the infant herein or to any party in this action or proceeding.

This is an action revolving around injuries sustained by infant Tyler Schessl on June 2, 2006. On that date, while attending a party at the home of Frank and Judy Coms the infant plaintiff was caused to suffer injuries when he was struck by the exposed shaft end of a badminton racquet that separated from its handle and was impaled above the left eye.

The nature and extent of the damages sustained by the infant, **TYLER SCHESSL**, are as follows:

Traumatic brain injury status post penetrating injury;

Increased intra-cranial pressure necessitating craniotomy and ventriculostomy;

Cognitive impairment;

Left sided hemi-paresis with greatest impact on left upper extremity;

After a lengthy hospitalization and years of therapy, the infant plaintiff has made tremendous strides. He continues to suffer, however with a significant cognitive impairment as well as what is now a relatively mild left sided hemi-paresis. As set forth in the accompanying affirmation Mary L. Dombovy, M.D., the infant plaintiff, Tyler Schessl can still benefit from further therapy and sport specific training.

There are no claimed liens and the infant plaintiff's medical bills in this matter have been paid by his parent's medical insurance provider. Other than the unreimbursed expenses set forth below, there are no outstanding medical bills regarding treatment of injuries sustained by infant plaintiff, **TYLER SCHESSL.**

Infant plaintiff's parents initially retained your affirmant's former firm, Parker, Waichman, Alonso to represent them in this matter. In January of this year, your affirmant left Parker Waichman Alonso to form Alonso Krangle LLP.[1] Shortly thereafter, in February of this year the infant plaintiff's parents decided to discharge the Parker firm and retain Alonso Krangle, LLP in this matter.

Upon discharge of the Parker firm your affirmant sent a letter seeking the complete file as well as the total disbursements. The request for the disbursements is annexed hereto as **Exhibit "B".** The disbursements totaled $115,253.45. The list of disbursements received is annexed hereto as **Exhibit "C".** After consult with the plaintiffs your affirmant sent a request via counsel to my former firm seeking an accounting of the expenses. A copy of that correspondence is annexed hereto as **Exhibit "D"**. To date, your affirmant has received no such accounting and has not been provided with the underlying file in this matter maintained by the Parker firm. Accordingly, the instant compromise petition is being submitted on notice to the Parker firm so that they may submit an application for approval of their disbursements and their legal fee.

---

[1] Following my departure from the firm a lawsuit was commenced by Parker Waichman, LLP against your affirmant and my current partner, David B. Krangle, also a former employee of the Parker firm. Said action is pending before the Hon. Timothy Driscoll in the Supreme Court of the State of New York, County of Nassau under Index Number 001215/12

At the time of the discharge of the Parker firm this matter had been the subject of initial mediation proceedings before the Hon. Magistrate Judge Payson. At the conclusion of a day of negotiations held before Judge Payson, the defendants made an offer of $500,000.00 to resolve this matter. The offer was rejected and the proceedings were adjourned.

Upon entry of my appearance in the case, your affirmant sent a letter to Magistrate Judge Payson advising her that Alonso Krangle had been substituted in place of the Parker firm. Shortly thereafter, I was advised that the offer had been increased to $1,025,000[2].

Your affirmant immediately re-started the negotiations with counsel for Franklin with the Court acting as intermediary. After lengthy negotiations via telephone, the parties remained far apart, but did agree to set another in person session in a final attempt at resolution. The meeting was conditioned by Judge Payson upon an agreement from the parties that they would negotiate within certain parameters. After obtaining agreement from the principals to the parameters set forth by the Court, the parties met on July 9, 2012. Although the parties came close to an agreement on that date, the mediation was unsuccessful and Judge Payson advised that her mediation efforts were at an end, but strongly admonished the parties to continue discussing resolution.

Negotiations continued and the parties were finally able to agree on a resolution for the total sum of $2,900,000 to settle all claims. The settlement is comprised of $2,850,000.00 from defendant Franklin Sporting Industries, $25,000 from the Coms defendants and $25,000 from the Cameron defendants.

I believe that this offer is fair, compensatory and in the best interests of the infant.

I have recommended the acceptance of the offer to compromise for the following reasons:

This settlement is fair and reasonable in that it provides a lifetime of compensation for the infant plaintiff and, if approved by the Court, will allow for additional funds to supplement the rehabilitation services the infant now receives. Moreover, as the Court is aware there are summary judgment and Daubert motions pending which could result in a dismissal of all claims.

---

[2] Mr. and Mrs. Schessl advise that they were told the offer by that time had been increased to $1,000,000 not $1,025,000.

Accordingly, given the magnitude of the offer and the risks attendant to continued litigation, I have recommended settlement and feel that it is in the best interests of the plaintiff

The following services were rendered in this matter: Successfully increased the offer in this matter from $1,000,000 or $1,025,000, to the final settlement amount of $2,900,000.00, reviewed all pending motion filings to advise client with regard to litigation strategies, obtained medical and school records in order to submit and prepare mediation submission, researched and prepared memorandum detailing the implications of New York State General Obligations law of a settlement with the prime defendant and the commencement of a separate action against the third-party defendants, reviewed and advised clients with regard to structure proposals, prepared these compromise papers and will prepare general releases and arrange for the deposit of the settlement monies as well as insure that appropriate accountings are made for any monies allowed to be used for infant Tyler Schessl's current needs Accordingly, I respectfully ask that Court to fix the legal fee of fifteen percent (15%) of the total settlement recovered, which is fair and reasonable value of the legal services rendered by the Alonso Krangle firm. I respectfully ask the Court to fix reimbursement of the expenses incurred in the prosecution of **TYLER SCHESSL**'s case by our office in the sum of $958.51. A copy of the expense report with explanation for my firm is annexed hereto as **Exhibit "E"**.

Even the most cursory review of the filings in this matter make it clear that the Parker firm did substantial work , but your affirmant is not able to articulate the full extent of that work, nor can I comment on all of the Parker firm's expenses as I was never provided with the file or an accounting of the expenses. Accordingly, as set forth above, your affirmant is copying the Parker firm on the instant application so that they may submit a petition to the Court for a legal fee in this matter and reimbursement of whatever expenses the Court deems appropriate.

In the event the Court orders approval of a total 1/3 legal fee in this matter to be divided by counsel, the settlement breakdown will be as follows:[3]

| | |
|---|---|
| **Total Settlement (PRESENT VALUE)** | **$2,900,000.00** |
| **Disbursements Parker Waichman** | **$ 115, 253.45** |
| **Disbursements Alonso Krangle** | **$ 958.51** |
| **Total Disbursements (If approved)** | **$ 116, 211.96** |
| **Net settlement** | **$2,783,788.04** |
| **Total legal fee (IF COURT ALLOWS A FULL 1/3)** | **$ 927,929.34** |
| **Net recovery** | **$1,855,858.70** |
| **Annuity Cost** | **$1,800,000.00** |
| **Unreimbursed expenses to Dawn and Kurt Schessl** | **$ 27,786.83** |
| **Fund for current rehabilitation needs of Tyler Schessl** | **$ 28,071.87** |

Plaintiff **DAWN SCHESSL and KURT SCHESSL** the parents of infant plaintiff have approximately $27,786.83 in unreimbursed expenses related to the injuries sustained by the infant plaintiff. As set forth in the affidavit of **DAWN AND KURT SCHESSL** plaintiffs respectfully request that Court allow repayment of those expenses from the total settlement of $2,900,000.00.

Plaintiff's respectfully request the Court's permission to place the remaining $28,071.87 in a custodial account for the sole benefit and use of infant plaintiff **TYLER SCHESSL** consistent with the current rehabilitation needs of the infant plaintiff as set forth in the affidavit of Mary Dombovy, M.D. If the Court approves, your affirmant will insure that the custodian of said account will make quarterly accountings with regard to the use of said funds.

It is further respectfully requested that in order to protect the privacy interests of the infant plaintiff and the other litigants herein, the Court order the terms of the settlement be confidential and the Court's file in this matter be sealed upon the conclusion of these proceedings.

---

[3] In the event the Court does not approve a full 1/3 legal fee, your affirmant will take all necessary steps to insure that any such proceeds not awarded to either of plaintiffs' counsel will be used to purchase a larger annuity solely for the benefit of infant plaintiff, TYLER SCHESSL.

We did not become concerned in the settlement at the instance of a party or person opposing, or with interest adverse to the infant, directly if indirectly, and we have not received and will not receive any compensation from such party or representative.

No previous application for the relief sought herein has been made to this or to any court.

**WHEREFORE**, your deponent prays the court to make and enter an order herein for the relief sought.

I state under the penalties of perjury that the statement herein made are true, except as to such statements as are based on information and belief, which statements I believe to be true.

Affirmed to be true this
25th day of September, 2012

ANDRES F. ALONSO, ESQ.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TYLER SCHESSL, an infant by his mother and natural guardian, DAWN SCHESSL and KURT SCHESSL, individually

Plaintiffs,

vs.

FRANKLIN SPORTING INDUSTRIES, INC.,

Defendants.

**AFFIDAVIT**

Docket No.: 07-CV-6234

---

FRANKLIN SPORTS, INC.,

Third-Party Plaintiff,

vs.

JUDI COMS, FRANK COMS, PATTY CAMERON, EVAN CAMERON, an infant, by his mother and natural Guardian, PATTY CAMERON, JEFF BANKY, JOHN DOE1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, ROE 6, ROE 7, ROE 8, ROE 9, and ROE 10

Third-Party Defendants.

---

STATE OF NEW YORK )
ss:
COUNTY OF MONROE )

Dawn Schessl and Kurt Schessl, being duly sworn, depose and say:

We are the parents and natural guardians of the infant plaintiff, TYLER SCHESSL. We reside at 32 Edendery Circle, Fairport, New York 14450. The infant plaintiff TYLER SCHESSL resides together with us.

The infant plaintiff, TYLER SCHESSL is fourteen (14) years of age, having been born on November 24, 1997.

The circumstances giving rise to this action are as follows:

On June 2, 2006, our son, TYLER SCHESSL, while attending a party at the home of Frank and Judi Coms was caused to suffer injuries when he was struck by the exposed shaft end of a badminton racquet that separated from its handle and was impaled above the left eye. While neither of us were witness to the event, it is our understanding that the injury occurred while Tyler and a group of children were playing a game of baseball; using the badminton racquet as a make shift "bat".

The nature and extent of the damages sustained by the infant, TYLER SCHESSL, are as follows:

Traumatic brain injury status post penetrating injury;

Increased intra-cranial pressure necessitating craniotomy and ventriculostomy;

Cognitive impairment;

Left sided hemi-paresis with greatest impact on left upper extremity;

After a lengthy hospitalization and years of therapy, our son has made tremendous strides. He continues to suffer, however with a significant cognitive impairment as well as what is now a relatively mild left sided hemi-paresis. We have been advised that Tyler can still benefit from further therapy and sport specific training.

In July, 2006, we retained PARKER WAICHMAN LLP, and agreed that compensation in the event of a recovery would be 1/3 of the amount so recovered on behalf of the infant and us as plaintiffs.

Our case was initially assigned to Andy Alonso who was then an attorney with the office. The file was later transferred to Raymond Silverman with the understanding that Mr. Alonso would continue to supervise and be available to us if we had question, in addition would be co counsel in the event the case was tried.

In February of this year, my wife received a phone call from Mr. Alonso advising her that he had left the firm of Parker Waichman Alonso LLP to form a new firm, Alonso Krangle LLP.

That evening she advised me that Mr. Alonso had left the firm. After discussing the situation with my wife we decided to call Mr. Alonso to see if he was interested in accepting our case.

Our decision to ask Mr. Alonso for assistance in this matter was based upon the fact that my wife Dawn and I had lost total confidence in Mr. Silverman's ability to handle this case and the settlement negotiations that started in January 2012. His conduct and feedback about the case had become very distant within the last 12 months. During the overall length of our son's case we always made it a habit to call and discuss the case every month. Last August 2011 there was a time when we our repeated telephone messages and e-mails were unanswered for over 8 weeks. My wife and I have grown very dissatisfied over the length and stall techniques that the defense has used. Whenever my wife or I would ask if it might help to call the defense to push them to meet the courts deadlines, Mr. Silverman would become defensive and tell us that you can not give the defendant ultimates. This was not our intention. We only wanted our attorney to be more assertive with our position. When the defense asked for a settlement sit-down we said yes but that it needed to happen in November 2011. It didn't occur until January 2012. Prior to our meeting Mr. Silverman gave us his thoughts on how the negotiations would go. He felt that this was a seven figure settlement and that the defendant would put up the first layer of coverage and that the negotiations would start in the seven figures. This was also what Judge Payson said to my wife and I when she talked to us during the court organized settlement negotiation. After a full day of negotiations the offer started at $500,000.00. My wife and I were both upset and dumbfounded at this first offer. There was an issue with the defendant's initial insurance layer carrier[1].

We did speak to Mr. Alonso on or about February 10th and he advised us that we needed to sign certain papers in order to retain him and discharge Mr. Silverman's firm. My wife and I signed a retainer with Mr. Alonso's firm for a contingent fee of 33 and 1/3%. At the execution of

[1] There are other aspects of Mr. Silverman's representation that we would like to discuss with the Court when the Court sets a hearing on this matter.

the retainer Mr. Alonso advised us that the total fee in the case could never exceed that amount. He further advised that it is often the case in a situation involving an infant plaintiff like Tyler that the Court could reduce the total fee.

After the discharge of the Parker Waichman firm, Mr. Alonso advised me that the total expenses claimed by the Parker firm were $115,253.45. I had previously been provided with that figure by Mr. Silverman. Mr. Alonso has advised us that he asked for an accounting of these expenses on our behalf and the Parker firm has thus far refused to provide any accounting. Mr. Alonso has advised us that he has expended a total of $958.51 in the prosecution of this action on our behalf. In addition, Mr. Alonso has advised me that he will be asking the Court to approve a total legal fee of no more than 15% for the work of Alonso Krangle in this matter.

I have also been advised by my attorney that the Parker firm will be put on notice that they need to submit a separate application for the approval of their expenses and fees. In light of their failure to provide the requested accounting and Mr. Silverman's actions in the negotiation of this case, I would ask the Court not to allow a fee to the Parker Waichman office and approval of the expenses only after Parker Waichman provides a proper accounting of the expenses that we are able to review. In particular, we have been unable to obtain any explanation of exactly what went into the "travel" expenses on the case. In fact to this day there are still ongoing issues with Parker Waichman. As recently as a week ago, Mr. Alonso advised us that his office has received a letter from Mr. Charles Brofman at Cybersettle. This letter claims that the case was referred to Parker Waichman by Cybersettle and that they are looking for a referral fee. We never signed any referral documents with Parker Waichman or advised that this situation may be a possibility. My sister in law once worked at Cybersettle and during a visit to the hospital told us she could get us a couple of names of attorneys. She later contacted us and personally gave the name of Parker Waichman. My wife and I have never called Cybersettle or spoken to Charles Brofman. As such we believe that Cybersettle in no way deserves a referral fee, typical office chatter can not constitute a referral worthy of more then a thank you. In short my wife and I feel that if Mr. Alonso had not taken over this case the whole settlement process would have broken

down. He was able to help and guide us thru this settlement process both psychologically and financially. His involvement in the beginning and end of this case was very instrumental in getting this case resolved, short of a lengthy trial in Federal court. Without him, this case for our infant son could have ended much differently. If for his work he is willing to accept a fee of 15% then to allow Parker Waichman even the same would be an injustice. He gave us hope and respect when we really needed it the most. Our courts need more attorneys like Mr. Alonso to help fight for what their clients want and most of all need. We have been fighting for over 6 years for our son's needs and at times it has been very difficult. Mr. Alonso's work and ultimate results have made it easier for us to continue and have hope for the future.

Our attorneys have informed us that an offer has been made to settle TYLER's claim as well as our individual claim for unreimbursed expenses expended for the total sum of $2,900,000.

| | |
|---|---|
| **Total Settlement (PRESENT VALUE)** | **$2,900,000.00** |
| **Disbursements Parker Waichman** | **$ 115, 253.45** |
| **Disbursements Alonso Krangle** | **$ 958.51** |
| **Total Disbursements (If approved)** | **$ 116, 201.96** |
| **Net settlement** | **$2,783,798.10** |
| **Total legal fee (IF COURT ALLOWS A FULL 1/3)** | **$ 927,932.69** |
| **Net recovery** | **$1,855,865.40** |

**Of the total $1,855,865.40 net recovery it is respectfully requested that the Court allow a total of $1,800,000 to be structured as follows:**

**$2,500.00 per month, guaranteed 4 years beginning November 24, 2015, at age 18. Last payment on October 24, 2019.**

**$3,087.08 per month for life, guaranteed for 30 years, beginning on November 24, 2019, at age 22 increasing at 2% compounding annually.**

**$200,000 guaranteed lump sum payable on November 24, 2015 at age 18.**

**$150,000 guaranteed lump sum payable on November 24, 2022 at age 25.**

**$150,000 guaranteed lump sum payable on November 24, 2026 at age 29.**

**$150,000 guaranteed lump sum payable on November 24, 2032 at age 35.**

**$150,000 guaranteed lump sum payable on November 24, 2042 at age 45.**

We have been advised that this proposal has a guaranteed benefit of **$2,862,429.37** and an expected benefit of **$5,777,983.25.**

Tyler's therapy consisted of several hours a day, seven days a week for years. The doctors felt that we needed this intense schedule because their thoughts were if the muscles, etc. were constantly stimulated it would eventually create new wiring pathways to the brain. As you can imagine this would be very difficult for any person but even more for a very young boy. My wife and I were running into difficulties both mentally and physically to push Tyler to continue the therapy. When we discussed these issues with doctors and therapists, they felt if the same and even different movements were used in a therapy setting it would be beneficial for Tyler. They knew of Tyler's big interest and participation in various sports and suggested assorted forms of sports training. We all felt that it would help Tyler to want to continue the therapy schedule while mentally it would make him feel that he was inching closer to his post injury self.

As to the remaining **$55,865.40** of TYLER's settlement it is respectfully requested that the Court allow that sum of $27,786.83 be returned to us immediately for medical and other expenses that have not been covered by our insurance. We have attached a tabulation in summary form of these expenses to this affidavit. As to the remaining $28,078.57 we ask the Court allow that sum to be deposited in an interest bearing account for TYLER's current use for medical, educational and rehabilitative services that our health insurance will not cover. We agree to provide the Court with any periodic reports with regard use of these funds as the Court deems appropriate. The bank our family uses is the Fairport Federal Credit Union located at 70 South Main Street, Fairport, NY.

We believe that the settlement and proposed distribution is fair, compensatory and in the best interest of the infant plaintiff. We approve this settlement and proposed distribution and

request the court's approval of the compromise offer rather then risk the uncertainty and expense of protracted litigation.

No other action or proceeding has been commenced on behalf of the infant plaintiff as a result of an accident in which the infant plaintiff was injured. We hereby waive any and all claims we may have for loss of service of the infant plaintiff.

We have no interest in any way adverse to the infant, nor have we become concerned or interested herein at the request of the opposing party directly or indirectly.

We are unaware of any liens on Tyler's recovery or any other unreimbursed expenses not set forth in the instant affidavit.

No previous application for the relief sought herein has been made to any court or judge.

**WHEREFORE**, we respectfully pray that the Court make and enter an order approving and authorizing the compromise as herein set fourth and further pray for such other relief as the Court may deem fitting and proper.

Dated: August 17 , 2012

Dawn M Schessl
DAWN SCHESSL

KURT SCHESSL

Sworn to before me this
17th day of August, 2012

Joyce Snyder
Notary Public

JOYCE SNYDER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SN6223420
Qualified in Ontario County
My Commission Expires June 14, 2014

**TYLER SCHESSL EXPENSE SUMMARY**

| | |
|---|---|
| CHECKS | 7,693.42 |
| MILEAGE | 10,805.96 |
| CREDIT CARDS | 9,287.45 |
| TOTAL | 27,786.83 |

| | | |
|---|---|---|
| TYLER SCHESSL EXPENSE SUMMARY | | |
| | | |
| AMOUNT | NAME | DESCRIPTION |
| 99.55 | WEGMANS | TYLER'S MEDICINE |
| 939.00 | SAEBO | SAEBO FLEX PURCHASE 2 OF 2 PAYMENTS |
| 60.00 | STRONG HEALTH | DR VISIT CO PAYS |
| 230.00 | STRONG MEMORIAL HOSPITAL | TYLERS SECOND STAY IN AUGUST |
| 250.00 | PARKRIDGE HOSPITAL | TYLER'S ST MARYS ADMISSION |
| 81.00 | MONROE MEDITRANS | TYLER TRANSPORTED FROM STRONG TO ST MARYS |
| 50.00 | SOUTHEAST QUADRANT MIBILE CARE | TYLER AMBULANCE |
| 107.54 | WEGMANS | TYLERS MEDICINE |
| 169.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| 169.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| 270.00 | FAST | TYLER'S REHAB SWIM THERAPY SESSIONS |
| 117.00 | FAST | TYLER'S REHAB SWIM THERAPY SESSIONS |
| 63.00 | FAST | TYLER'S REHAB SWIM THERAPY SESSIONS |
| 36.00 | FAST | TYLER'S REHAB SWIM THERAPY SESSIONS |
| 63.00 | FAST | TYLER'S REHAB SWIM THERAPY SESSIONS |
| 199.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| 86.39 | PERANNIS HOCKEY WORLD | TYLERS NEW HELMET |
| 125.00 | FLL | TYLER'S REHAB SPORTS THERAPY |
| 30.00 | GOLDS GYM | TYLER'S REHAB |
| 210.00 | GOLDS GYM | TYLERS REHAB |
| 240.00 | GOLDS GYM | TYLERS REHAB |
| 240.00 | GOLDS GYM | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | BRIAN REGREA | TYLER'S REHAB |
| 80.00 | BRIAN REGREA | TYLER'S REHAB |
| 80.00 | BRIAN REGREA | TYLER'S REHAB |
| 125.00 | FLL | TYLER'S REHAB SPORTS THERAPY |
| 120.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 120.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 80.00 | FREE YOURSELF FITNESS | TYLER'S REHAB |
| 65.00 | FLL | TYLER'S REHAB SPORTS THERAPY |
| 36.00 | FROZEN ROPES | TYLER'S REHAB SPORTS THERAPY |
| 10.00 | FROZEN ROPES | TYLER'S REHAB SPORTS THERAPY |
| 36.00 | FROZEN ROPES | TYLER'S REHAB SPORTS THERAPY |
| 36.00 | FROZEN ROPES | TYLER'S REHAB SPORTS THERAPY |
| 36.00 | FROZEN ROPES | TYLER'S REHAB SPORTS THERAPY |
| 36.00 | FROZEN ROPES | TYLER'S REHAB SPORTS THERAPY |
| 350.00 | DAWN WITH TYLER TO BALTIMORE | TOOK OUT ON SATURDAY 7/16/2011. POSTED 7/18/2011. |
| 65.00 | FLL | TYLER'S REHAB SPORTS THERAPY |
| 240.00 | BOB JANOSZ GOALTENDING | TYLER'S REHAB SPORTS THERAPY |
| 46.36 | PERONIS HOCKEY | TYLER'S REHAB SPORTS THERAPY, EQUIPMENT |
| 240.00 | BOB JANOSZ GOALTENDING | TYLER'S REHAB SPORTS THERAPY |
| 120.00 | BOB JANOSZ GOALTENDING | TYLER'S REHAB SPORTS THERAPY |
| 323.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| 41.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| 453.58 | LOCKER ROOM SPORTS | TYLER'S REHAB SPORTS THERAPY, EQUIPMENT |
| | | |
| 7,693.42 | TOTAL | |
| | | |

# TYLER SCHESSL EXPENSE SUMMARY

For rehab travel for Tyler Schessl to the Unity Rehabilitation center at Lexington Avenue in Rochester New York.

| | | | |
|---|---|---|---|
| Round trip travel | 32 miles. | 32.00 | miles |
| Weekly trips | 3 | 3.00 | |
| Duration | 3 years | 150.00 | weeks |
| Miles driven for rehab. | | 14,400.00 | |
| Mileage rate | 0.55 | | |
| Estimated cost for rehab travel. | | 7,920.00 | |

Must include mileage

| | | |
|---|---|---|
| Drop off | Home to School, Mornings (round trip) | 6.00 |
| Pick up | Home to School, Afternoons (round trip) | 6.00 |

9/2006 to 6/2008

2 yrs.

Mileage to drive Tyler to school
12 miles per day round trip
160 days
55 cents per mile. 2,112.00

**Windows User:**
8 months at 20 days a month.

For rehab travel for Tyler Schessl to Kennedy Krieger Institute in Baltimore, MD.

| | | | |
|---|---|---|---|
| Round trip travel | 703.60 miles. | 703.60 | miles |
| 3 trips | 2 | 2.00 | |
| Miles driven for rehab. | | 1,407.20 | |
| Mileage rate | 0.55 | | |
| Estimated cost for rehab travel. | | 773.96 | |

Total 10,805.96

| | | | |
|---|---|---|---|
| | | TYLER SCHESSL EXPENSE SUMMARY | |
| | AMOUNT | NAME | DESCRIPTION |
| | 150.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| | 166.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| | 169.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| | 99.55 | WEGMANS | TYLER'S MEDICINE |
| | 240.00 | BRAIN INJURY COUNSELING RESOURCES | COUNSELING SERVICES FOR TYLER |
| | 107.54 | WEGMANS | TYLER'S MEDICINE |
| | 107.00 | SAEBO | BALL THERAPY STAND |
| | 94.00 | URMC/ UNITY | DR VISIT CO PAYS |
| | 480.00 | BRAIN INJURY COUNSELING RESOURCES | COUNSELING SERVICES FOR TYLER |
| | 280.00 | URMC/ UNITY | DR VISIT CO PAYS |
| | 280.00 | URMC/ UNITY | DR VISIT CO PAYS |
| | 14.00 | WEGMANS | TYLER'S MEDICINE |
| | 845.00 | SAEBO | SAEBO FLEX PURCHASE 1 OF 2 PAYMENTS |
| | 480.00 | BRAIN INJURY COUNSELING RESOURCES | COUNSELING SERVICES FOR TYLER |
| | 99.55 | WEGMANS | TYLER'S MEDICINE |
| | 240.00 | BRIAN REGREA | TYLER'S REHAB |
| | 369.00 | MAKSYMUM HOCKEY | TYLER'S REHAB SPORTS THERAPY |
| | 575.00 | REABOK | TYLER'S REHAB SPORTS THERAPY, EQUIPMENT |
| | 300.00 | MIKE ZEE | MUSIC THERAPY AT NAZARETH |
| | 821.56 | NEURO-OPHTHALMOLOGY OF ROCHESTER | NEURO TESTING |
| | 2,408.35 | KENNEDY KREIGER INSTITUTE | LODGING, TRAVEL, MEALS AND MEDICINE TO KKI IN JULY/ AUGUST 2012 |
| | 361.90 | CAPITAL ONE | REHAB EQUIPMENT |
| | 600.00 | CITIBANK | MISC REHAB SUPPLIES |
| | | | |
| | 9,287.45 | TOTAL | |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TYLER SCHESSL, an infant by his mother and natural guardian, DAWN SCHESSL and KURT SCHESSL, individually

Plaintiffs,

vs.

FRANKLIN SPORTING INDUSTRIES, INC.,

Defendants.

**AFFIDAVIT**

Docket No.: 07-CV-6234

FRANKLIN SPORTS, INC.,

Third-Party Plaintiff,

vs.

JUDI COMS, FRANK COMS, PATTY CAMERON, EVAN CAMERON, an infant, by his mother and natural Guardian, PATTY CAMERON, JEFF BANKY, JOHN DOE1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, ROE 6, ROE 7, ROE 8, ROE 9, and ROE 10

Third-Party Defendants.

STATE OF NEW YORK )
ss:
COUNTY OF MONROE )

TYLER SCHESSL, being duly sworn, depose and say:

I am fourteen (14) year old having been born on November 24, 1997.

I make this affidavit at the request of my attorney, Mr. Alonso as well as my parents, Dawn and Kurt Schessl.

I am the infant plaintiff in this matter.

I suffered a head injury on June 2, 2006, when I was stuck by the exposed shaft end of a badminton racquet that separated from its handle and was impaled above the left eye.

In addition to the head injury, I suffered paralysis to my left side.

Through a lot of hard work and help from my mom, dad and my doctors, I believe I have made an excellent recovery.

I still need some help in school, but I attend regular classes and am planning on going to college when I graduate.

I have been advised by my attorney as well as my parents that there has been an offer to settle my case in the amount of TWO MILLION NINE HUNDRED THOUSAND ($2,900,000) DOLLARS.

I understand that the proceeds of my settlement will be placed into a structured account that will not be made available to me until I am over the age of eighteen (18).

I further understand that not all of the funds will be made available to me. Instead, the annuity will provide me with income for my lifetime as well as lump sum payments over the course of my life.

I further understand that my parents are requesting the repayment of some expenses that have not been covered by my father's insurance.

I further understand that my parents have requested a small portion of my settlement be made available immediately to cover expenses for physical and sports therapy that may assist me in my rehabilitation that insurance will not cover.

I have discussed this settlement with my parents at length and Mr. Alonso has answered all of our questions.

I respectfully request that this Court approve my settlement in the form set forth in my parents' affidavit as well as the affirmation of Mr. Alonso.

I have been advised by Mr. Alonso that the Court would likely set a hearing on this matter to approve the settlement.

I would be happy to answer any questions the Court may have for me.

Dated: August 28th, 2012

Tyler Schessl
TYLER SCHESSL

Sworn to before me this
28th day of August, 2012

Charlotte A. Williams
Notary Public

CHARLOTTE A. WILLIAMS
Notary Public, State of New York
Qualified in Monroe County
REG. #01WI6117558
Commission Expires Nov. 1, 2012

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TYLER SCHESSL, an infant by his mother and natural guardian, DAWN SCHESSL and KURT SCHESSL, individually

Plaintiffs,

vs.

FRANKLIN SPORTING INDUSTRIES, INC.,

Defendants.

**AFFIRMATION**

Docket No.: 07-CV-6234

FRANKLIN SPORTS, INC.,

Third-Party Plaintiff,

vs.

JUDI COMS, FRANK COMS, PATTY CAMERON, EVAN CAMERON, an infant, by his mother and natural Guardian, PATTY CAMERON, JEFF BANKY, JOHN DOE1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, ROE 6, ROE 7, ROE 8, ROE 9, and ROE 10

Third-Party Defendants.

MARY L. DOMBOVY, M.D., affirms the following under penalties of perjury:

I make this affirmation pursuant to the CPLR in connection with the application pending before the Court for the approval of the settlement on behalf of infant plaintiff, **TYLER SCHESSL**.

I am a physician licensed to practice in the State of New York.

I received my medical degree from the Mayo Medical School College of Medicine in Rochester, Minnesota.

I completed my Neurology residency at Mayo Graduate School of Medicine.

I completed my Physical Medicine and Rehabilitation residency at the University of Wisconsin.

I am board-certified in both physical Medicine and Rehabilitation and Neurology.

My major areas of clinical and research interest are in recovery from stroke and brain injury.

I am presently affiliated with Unity Rehabilitation and Neurology.

Tyler Schessl has been a patient of Unity since his discharge from hospital on July 29, 2006.

As a result of the incident which took place on June 2, 2006, Tyler Schessl sustained the following injuries:

- PENETRATING HEAD INJURY;
- LARGE INTRACRANIAL BLEED;
- DEPRESSED SKULL FRACTURE WITH BONY FRAGMENTS TO PARENCHYMA.

Although he suffered a significant traumatic brain injury, young Tyler has made a very good recovery over all.

He has not, however, completely recovered.

I last examined Tyler Schessl on March 5, 2012. I am next scheduled to see him in September, 2012.

He still suffers from a very mild residual left hemiparesis, as well as cognitive issues, especially with executive functioning.

With accommodations, Tyler has been able to do grade level school work.

I believe that Tyler can still benefit from rehabilitative services as well as sports specific training for his left sided hemiparesis as long as direct head contact is not involved.

I am of the opinion with a reasonable degree of medical certainty that TYLER SCHESSL will be able to handle his own personal and financial affairs upon reaching the age of majority.

All of my medical bills for the care of TYLER SCHESSL have been paid.

I have not become interested in the outcome of this matter, nor have any of my bills been paid by anyone with an interest that is in any way adverse to the infant plaintiff in this matter TYLER SCHESSL.

My office chart detailing the treatment of TYLER SCHESSL is annexed hereto.

MARY L. DOMBOVY, MD.
8/16/12

AFFIRMED THIS 16th DAY OF AUGUST, 2012.